# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNA B. ISBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11 C 2347 |
| | ) |
| JOHN CRANE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On September 2, 2014 this Court signed the litigants' jointly submitted proposed Final Pretrial Order ("FPTO") asserting disability-based claims, and in accordance with its customary practice it also set a timetable for the parties' anticipated motions in limine. Both sides have tendered their respective motions and their responses to those motions -- a single motion advanced by plaintiff Anna Isbell ("Isbell") and ten motions tendered by defendant John Crane, Inc. ("Crane") -- so that the motions are ripe for resolution. This memorandum opinion and order undertakes that task.

## Background

Isbell sued her former employer Crane on multiple grounds, including its failure to accommodate disabilities that according to Isbell and her doctors interfered with her ability to arrive at work at the usual start time (see Amended Complaint Counts I, II, VI and VII and see, e.g., Joint St. ¶¶ 16, 23, 51-52; I. Exs. 10, 21, 27, 30).[1] Although Crane had accommodated

---

[1] Abbreviations for the parties' names ("I." for Isbell and "C." for Crane) are employed in conjunction with all other abbreviations. Thus documents from Isbell's Exhibit List (FPTO

(continued . . .)

Isbell's scheduling needs for some 2-1/2 years, Crane suddenly revoked those accommodations after a change in management (Joint St. ¶¶ 22, 31). According to Crane, the continued accommodation of Isbell's later start time imposed an undue hardship because a significant component of her job comprised providing internal customer service and performing other time-bound tasks (see C. Mem. 17-18, and see, e.g., C. Ex. 16). Because this Court has already granted summary judgment in favor of Isbell on her failure-to-accommodate claims, the sole issue for trial is damages.

## Standard

District courts "have broad discretion in ruling on . . . motions in limine" (<u>Jenkins v. Chrysler Motors Corp.</u>, 316 F.3d 663, 664 (7th Cir. 2002)). Such motions serve "a gatekeeping function" and permit a court to eliminate evidence that "clearly would be inadmissible for any purpose" (<u>Jonasson v. Lutheran Child and Family Servs.</u>, 115 F.3d 436, 440 (7th Cir. 1997)).

## Isbell's Motion

Isbell's sole motion, which seeks to exclude all evidence and testimony as to claimed "undue hardship," is denied. Such evidence is relevant for a limited purpose under Fed. R. Evid. ("Rule") 401 and, with an appropriate limiting jury instruction, would be neither unduly prejudicial nor confusing so as to warrant exclusion under Rule 403.

As Isbell argues correctly, this Court has already ruled as a matter of law that Crane failed to provide sufficient evidence that accommodating Isbell would impose an undue hardship on Crane. But that is not the end of the story, for evidence that Crane <u>believed</u> it would suffer

---

(footnote continued)
Sched. B) will be cited "I. Ex. --" while documents from Crane's Exhibit List (FPTO Sched. C) will be cited "C. Ex. --." Paragraphs from the Joint Statement of Facts (FPTO Ex. A) will be cited "Joint St. ¶ --."

undue hardship is nevertheless relevant to the possible award of punitive damages. To make out a case for punitive damages under the Americans with Disabilities Act ("ADA," 42 U.S.C. §12117(a)), Isbell must prove that (1) Crane acted with "malice" or "reckless indifference" toward her rights under federal law and (2) for that purpose Crane can properly be held liable under agency principles (EEOC v. AutoZone, Inc., 707 F.3d 824, 835 (7th Cir. 2013), citing to and quoting from Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999)). Even if Isbell establishes those first two elements, Crane can avoid being mulcted in punitive damages for its managers' actions by proving that it engaged in good faith efforts to implement an anti-discrimination policy (Kolstad, 527 U.S. at 544-46).

Evidence that Crane believed that accommodating Isbell posed an undue hardship for the Company is relevant to the first element of the punitive damages analysis: whether it acted with "malice" or "reckless indifference" toward Isbell's federally protected rights. Under the ADA an employer has a duty to give "qualified individual[s]" with disabilities "reasonable accommodations" for their "known physical or mental limitations" unless doing so imposes an "undue hardship" on the employer (42 U.S.C. §§ 12112(a) and 12112(b)(5)(A)). To the extent that Crane is found to have believed that accommodating Isbell's later start time entailed "undue hardship," even if the company was capable of accommodating her as a factual matter, a jury could conclude that Crane did not possess the requisite "malice" or "reckless indifference" to support an award of punitive damages.

Nor should such evidence be excluded under the Rule 403 balancing approach. If the jury were to conclude that Crane did genuinely believe that accommodating Isbell presented an undue hardship, that would not pose a risk of "unfair prejudice." To exclude evidence on that score would inappropriately deprive Crane of a potential defense against an award of punitive

damages. Nor would such evidence needlessly confuse the jury. With a suitable limiting instruction, jurors should be fully capable of understanding that Crane violated the law but may not have done so in the bad faith required for a punitive damages award.

### **Crane's Motion No. 1**

Crane's first motion, which seeks to bar evidence as to its financial status, is granted in part and denied in part.[2] For purposes of that and the other motions, it should be understood that this Court contemplates a potential two-stage trial with the same jury:

1. In the first stage the jury will be called upon to render a general verdict as to Isbell's compensatory damages together with providing special interrogatory responses that address the three earlier-mentioned elements essential to a possible award of punitive damages (but with no mention of punitive damages having been made in that first stage of the trial).

2. If those three elements are answered in Isbell's favor (they will hereafter be spoken of as the "prima facie case for punitive damages"), the second stage of the trial will be devoted to evidence and arguments as to the potential award of punitive damages.

Thus evidence of Crane's financial status is barred during the trial's first stage, for Crane's wealth is irrelevant both to the jury's determination of compensatory damages and as to its

---

[2] It is unclear whether Crane is asking to bar any mention of Crane's financial status or whether it seeks only a ban on relative comparisons of Crane's wealth to that of Isbell. Crane leads by asking this Court to ban reference to either party's financial status, but in an ensuing paragraph it admits that Isbell's financial status may in fact be relevant to compensatory damages and states that it seeks only a ban on discussion of the "relative wealth of the parties" (C. Mem. 2). Because Crane has led with a general request to prohibit reference to financial status, the motion will be read as a broad request for a ban on evidence of Crane's financial status, both in isolation and as compared to that of Isbell.

factual determination of the factors that teach whether Isbell can prove that she is entitled to punitive damages. In addition, any attempted comparison of Crane's wealth to that of Isbell is barred throughout both stages of the trial, for any attempts to invoke juror sympathy by referring to the relative wealth or poverty of parties are "improper" where the action does not otherwise implicate such factors (Adams Labs., Inc. v. Jacobs Eng'g Co., 761 F.2d 1218, 1226 (7th Cir. 1985)).

But evidence of Crane's financial status does become relevant if Isbell makes out her prima facie case so as to necessitate a second trial stage. While "a defendant's wealth is not a sufficient basis for awarding punitive damages" in and of itself (Mathias v. Accor Econ. Lodging, Inc., 347 F.3d 672, 677 (7th Cir. 2003)), the Supreme Court has referred to the "financial position" of the defendant as a factor that can be considered in evaluating punitive damages (see Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991)) and has upheld a punitive damages award where the jury was explicitly instructed to consider the corporate defendant's financial position (see TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 462-64 (1993) (plurality opinion)).[3] Indeed, that plurality opinion said that "[u]nder well-settled law," factors such as net worth "are typically considered in assessing punitive damages" (id. at 462 n.28).

As for our own Court of Appeals, two cases (Zazú Designs v. L'Oréal, S.A., 979 F.2d 499, 508-09 (7th Cir. 1992) and Kemezy v. Peters, 79 F.3d 33, 35-36 (7th Cir. 1996), citing Zazú) suggest that a corporate defendant's financial status should not usually bear on punitive

---

[3] Although each of those cases involved punitive damages under state law, the logic underpinning them applies with equal force to punitive damages under federal law.

damages under federal law.[4] But that guidance sits in tension with the earlier-cited Supreme Court discussions of punitive damages and with the views of a number of other circuits.[5] Moreover, in a more recent case involving both corporate and individual defendants, our Court of Appeals in Leister v. Dovetail, Inc., 546 F.3d 875, 883 (7th Cir. 2008), which stated that wealth should bear on the appropriate size of an award of statutory penalties, drew no distinction between the corporate defendant and the individual defendants involved .

In sum, absent further clarification from our Court of Appeals itself, this Court joins the healthy number of its colleagues who have held that a corporate defendant's economic position is relevant to punitive damages determinations under federal law (see, e.g., El-Bakly v. AutoZone, Inc., 04 C 2767, 2008 WL 1774962, at *4-6 (N.D. Ill. Apr. 16, 2008); Cox v. Prime Fin. Mortgage Corp., No. Civ. A. 05 C 4814, 2006 WL 1049948, at *3 (N.D. Ill. Apr. 20, 2006); Jones v. Scientific Colors, Inc., Nos. 99 C 1959, 00 C 0171, 2001 WL 902778, at *1 (N.D. Ill. July 3, 2001)). Hence Crane's Motion No. 1 is denied as to the trial's second stage, if the jury's verdict at the first stage requires one.

---

[4] Judge Easterbrook, sitting by designation in this District Court, has characterized his discussion in Zazú as a "holding" (see Pivot Point Int'l, Inc. v. Charlene Products, Inc., 932 F. Supp. 220, 223 (N.D. Ill. 1996)), but that appears questionable. Zazú reversed a judgment against L'Oréal, holding that L'Oréal had prevailed on the merits so that plaintiff Zazú was "not entitled to damages of any size" (Zazú, 979 F.2d at 509). That would seem to classify any discussion of punitive damages there as dictum. Although Yund v. Covington Foods, Inc., 193 F.R.D. 582, 586-87 (S.D. Ind. 2000) is a Magistrate Judge's opinion that says otherwise, that opinion really mischaracterizes the Zazú holding.

[5] See, e.g., EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 516 (6th Cir. 2001), Cortez v. Trans Union LLC, 617 F.3d 688, 718 n.37 (3rd Cir. 2010) (citing the Restatement (Second) of Torts § 908(2) (1979)) and Bains LLC v. ARCO Prods. Co., 405 F.3d 764, 777 (9th Cir. 2005).

**Crane's Motion No. 2**

As the just-completed discussion forecasts, Crane's request to bar reference to punitive damages until Isbell makes out a prima facie case for them -- that is, until the first stage of the trial is completed -- is granted. There is no need to advise the jury of the reason for including the special interrogatories -- it is enough just to provide it with appropriate instructions and the verdict form itself.[6] That avoids the danger that a mention of punitive damages during the trial's first stage could unfairly prejudice the jury's assessment of compensatory damages.

For her part, Isbell contends that by forcing her to prove a prima facie case without mentioning punitive damages, Crane is attempting to re-litigate questions of fact that were assertedly decided at summary judgment -- that this Court has already effectively decided that Isbell has made a prima facie showing that she is eligible for punitive damages. That is flat-out wrong. This Court held that Crane broke the law, not that Crane did so in the willful manner that punitive damages require.

**Crane's Motion No. 3**

Crane's third motion, which would propose to bar any reference to previously adjudicated claims, is granted without objection. Isbell concedes that any reference to those previously adjudicated claims for retaliation and sex discrimination under Title VII and the IHRA (claims on which summary judgment in Crane's favor was granted) would be irrelevant to this trial. That

---

[6] In support of her argument that the Court should permit her to refer to punitive damages throughout the trial, Isbell cites to an unpublished district court opinion, Hillard v. City of Chicago, 09 C 2017, 2010 WL 1664941, at *6 (N.D. Ill. Apr. 23, 2010), where the judge denied the defendant's motion to prohibit the plaintiff from making any mention of punitive damages at all on the premise that an award of punitive damages was potentially proper. That handling of the issue is unpersuasive as an alternative to the balanced approach taken here.

does not of course bar reference to underlying facts that, though they may be relevant to those previously adjudicated claims, are also relevant to Isbell's present claim for damages.

### Crane's Motion Nos. 4 and 5

Because Isbell does not contest either of those motions, neither calls for discussion. Instead both are also simply granted without objection.

### Crane's Motion No. 6

Crane's motion to prohibit Isbell or her counsel from suggesting that the jury draw negative inferences regarding the layoffs of key Crane employees Walter Burdorf, Antonio Caballero and James Derby -- all of which occurred after the filing of this lawsuit -- is denied at this pretrial stage, but without prejudice to its possible appropriate reconsideration when the trial evidence unfolds. Crane argues that its employees were separated due to corporate restructuring -- not for cause or performance reasons or due to any "cleaning of house" in the wake of this litigation. As a result, Crane claims that it would be factually incorrect, irrelevant and unfairly prejudicial for Isbell to encourage the jury to draw such inferences.

Crane's request for a blanket bar on the drawing of "negative inferences" is both premature and too amorphous. At trial Crane may proffer evidence to support its assertion that those employees were separated due to corporate restructuring -- and it is of course the jury's job, not that of the Court, to hear the testimony, weigh the evidence and reach its own conclusion on the matter. Depending on the evidence, it may or may not turn out to be arguably probative as to whether Crane did or did not act with malice or with reckless disregard toward Isbell's rights, as well as to the credibility of those three men as witnesses. At this point this Court has no real

information to support a definite conclusion in either direction on that score, so that a denial of the motion without prejudice is the most responsible route to take.

### Crane's Motion No. 7

Crane's motion to bar Isbell or her counsel from presenting evidence or argument that she is entitled to back pay is granted. Both under the caselaw (see, e.g., Pals v. Schepel Buick & GMC Truck, Inc., 220 F.3d 495, 500-01 (7th Cir.2000)) and by statute (see 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5 into the ADA) issues of back pay under the ADA are committed to the court and not to the jury for determination.

Despite Isbell's argument to the contrary, the jury is not entitled to know whether or to what extent back pay is awarded in this case. That is irrelevant to the jury's quantification of the damages it is being asked to award. Such extraneous evidence might well precipitate needless confusion and would surely create the potential for unfair prejudice.

### Crane's Motion No. 8

Crane's motion to bar reference to Dr. David Hartmann as its "company doctor" is also granted. Isbell and Crane agree that he was an independent medical examiner whom Crane engaged to examine Isbell on one occasion (Joint St. ¶¶ 62-65, 69). Crane's having paid Dr. Hartmann for that one-time examination does not make him the "company doctor," and to use such a term could create the inaccurate inference that Crane ignored the advice of its own in-house doctor, an inference that poses a major risk of undue prejudice. Isbell can clearly explain Dr. Hartmann's involvement to the jury and refer to him by his name and occupation -- the phrase "company doctor" is both unnecessary and inaccurate.

### Crane's Motion No. 9

Crane's motion to bar evidence that Crane's Human Resource personnel and supervisors did not have medical training is denied. Evidence that key decisionmakers lacked medical training -- especially given that they chose to substitute their own lay opinions for the advice of numerous doctors -- is surely relevant to a potential award of punitive damages under federal law, because to that end Isbell must show that the employer acted with malice or reckless disregard toward Isbell's federally protected rights. To the extent that such clearly relevant evidence may prejudice Crane's case, it does so with total fairness -- not simply because as a matter of definition all relevant evidence is necessarily prejudicial to the party against whom it is introduced (or else it would not be relevant and hence admissible), but also because the common-sense language of Rule 403 makes "<u>unfair</u> prejudice" the linch-pin of inadmissibility.

### Crane's Motion No. 10

Crane's motion to bar Isbell from introducing into evidence the August 25, 2009 note from Dr. Carl Wahlstrom is denied. Dr. Wahlstrom's note is relevant to whether Crane acted with malice or reckless disregard in its refusal to accommodate Isbell, and it is thus relevant to Isbell's case for punitive damages. Crane argues that the note is irrelevant because Isbell submitted the note to Crane on the same day she was discharged, but there is no evidence that directly supports that contention. Instead the evidence reflects that Dr. Wahlstrom's note is dated August 25, while both the final approval to terminate Isbell and Isbell's actual termination occurred on the following day (see Isbell Exs. 31, 32). But regardless of whether Crane received the note on August 25 or 26, Crane expressly acknowledges that it terminated Isbell because of her tardiness to work, and a jury might reasonably find that Crane should have revisited its decision in light of Dr. Wahlstrom's note.

## **Conclusion**

In brief, these are this opinion's rulings on the motions in limine by plaintiff Anna Isbell (Dkt. 92) and defendant John Crane, Inc. (Dkt. 94, which comprises its Motion Nos. 1 through 10):

1. Isbell's motion is denied.

2. Crane's Motion No. 1 is granted in part and denied in part.

3. Crane's Motion Nos. 2, 7 and 8 are granted.

4. Crane's Motion Nos. 3, 4 and 5 are granted without objection.

5. Crane's Motion No. 6 is denied without prejudice to its possible later renewal.

6. Crane's Motion Nos. 9 and 10 are denied.

Because Isbell has now noticed up a motion for leave to amend the FPTO, to which Crane has just filed its objection, this Court will deal with that subject at the scheduled November 25 presentment date.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 21, 2014